**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

THOMAS BURNS,
 *Plaintiff*,

 v.

AMERICAN FEDERATION OF
TEACHERS *et al.*,
 *Defendants*.

No. 3:20-cv-01250 (JAM)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This case involves claims arising from an election for leadership of a labor union.

Plaintiff Thomas Burns ran for president of the New Haven Federation of Teachers, Local 933

("NHFT"). He lost. Following his loss, Burns alleges that he learned not only of election

irregularities but also of defamatory statements that his opponent had made against him during

the campaign. He subsequently filed election complaints and appeals with the NHFT and its

national and state affiliate unions—the American Federal of Teachers, AFL-CIO ("AFT

National") and AFT Connecticut ("AFT CT"). The unions investigated Burns's allegations, but

they absolved his opponent of wrongdoing, concluded that Burns had tried to extort his

opponent, and barred Burns from running in the next two election cycles.

Burns has now filed this lawsuit against the unions and their presidents. The defendants

have moved to dismiss the complaint in its entirety. I will grant their motion to dismiss.

**BACKGROUND**

The following facts are drawn from the amended complaint and presented in the light

most favorable to Burns as the non-moving party.

Burns is a Connecticut resident who ran for president in December 2018 of NHFT.[1] NHFT is a local labor organization that represents school teachers in New Haven, Connecticut, and it is a member of defendant AFT National, a national labor organization that represents public school teachers in Connecticut and throughout the United States.[2] Defendant David Cicarella was and is the president of NHFT.[3] Defendant Randi Weingarten was and is president of AFT National.[4] Defendant AFT Connecticut is the state-level affiliate of AFT National and represents public school teachers in Connecticut.[5] Defendant Jan Hochadel was and is the president of AFT Connecticut.[6]

From around 2007 and through the filing of this lawsuit, Cicarella served as president of NHFT.[7] Burns served as vice president from 2007 until the end of 2018.[8] Burns ran for president of NHFT against Cicarella in 2018 but he lost the election by just 20 votes out of more than 880 cast.[9]

After the election, Burns learned that Cicarella had told other union members during the campaign that Burns was using drugs and was planning to use union funds to support his habit.[10] Cicarella apologized to Burns when Burns confronted him about the statements.[11]

Burns then took a series of steps to complain about the election results and Cicarella's conduct. On or about January 24, 2019, Burns filed an election complaint with the trustees of

---

[1] Doc. #12 at 2-3 (¶¶ 5, 10).
[2] *Id.* at 2-3 (¶¶ 6, 10).
[3] *Id.* at 3 (¶ 11).
[4] *Id.* at 2 (¶ 7).
[5] *Ibid.* (¶ 8).
[6] *Ibid.* (¶ 9).
[7] *Id.* at 3 (¶ 12).
[8] *Ibid.* (¶ 13).
[9] *Ibid.* (¶¶ 14–16).
[10] *Ibid.* (¶ 17).
[11] *Ibid.* (¶ 18).

NHFT.[12] After performing no more than a perfunctory investigation, the trustees upheld the election results in a decision dated March 5, 2019. [13]

On March 22, 2019, Burns filed an appeal of the decision with AFT National.[14] A few days later, Burns requested that AFT CT conduct an investigation into possible embezzlement and misuse of funds by Cicarella.[15] Around April 1, 2019, AFT National responded to Burns and indicated that it would investigate his election complaints.[16] On or about April 24, 2019, Burns also sent a complaint to the Office of Labor-Management Standards ("OLMS") at the United States Department of Labor concerning the election.[17]

Around April 30, 2019, NHFT Vice President Pat Delucia asked Burns to attend a meeting with Cicarella and Eric Chester, an attorney representing NHFT. At the meeting, Chester told Burns that if he went to the authorities about Cicarella's embezzlement and misuse of funds, "it would not look good" and could harm the union.[18] Chester asked Burns to let AFT CT investigate the embezzlement and not involve any other authorities, and Cicarella asked Burns what could be done so that Burns would neither involve the authorities nor make the embezzlement allegations public.[19] Burns responded that he would not go to the authorities if Cicarella resigned.[20] Burns made no other request, and he also indicated that he had no intention to run for president if Cicarella resigned.[21]

---

[12] *Ibid.* (¶ 19).
[13] *Id.* at 4 (¶ 20).
[14] *Ibid.* (¶ 22).
[15] *Ibid.* (¶ 23).
[16] *Ibid.* (¶ 24).
[17] *Ibid.* (¶ 25).
[18] *Ibid.* (¶¶ 27–28).
[19] *Ibid.* (¶¶ 29–30).
[20] *Ibid.* (¶ 31).
[21] *Ibid.* (¶ 32).

A few days later, on May 3, 2019, Burns was asked for a second meeting with Cicarella and Chester.[22] At that meeting, Cicarella requested that Chester prepare a memorandum of understanding wherein Cicarella would agree to resign from the presidency.[23] Chester agreed to prepare the memorandum, but Cicarella indicated that he needed more time to decide whether he would resign.[24]

Sometime after the second meeting, Chester called Burns and advised him to retain a lawyer because Cicarella was planning to file a police report alleging that Burns had extorted him.[25] On May 8, 2019, Burns received a letter from an attorney for Cicarella alleging that Burns extorted Cicarella.[26]

In the meantime, AFT CT retained an attorney, Michael Doyle, to perform an investigation of Burns's allegations that Cicarella had embezzled and misused union funds.[27] Although Doyle was supposedly hired to be "independent," Doyle is a member of Chester's law firm, which has represented the union and handled previous matters for Cicarella.[28]

As a result of Burns's complaint to OLMS, Burns was interviewed by OLMS staff on May 13, 2019.[29] Less than a year later, in April 2020, the United States Department of Labor filed a lawsuit seeking to overturn the NHFT rerun election.[30]

---

[22] *Ibid.* (¶ 34).
[23] *Ibid.* (¶ 35).
[24] *Ibid.* (¶¶ 35–36).
[25] *Ibid.* (¶ 37).
[26] *Ibid.* (¶ 38).
[27] *Id.* at 6 (¶ 39).
[28] *Ibid.* (¶¶ 39-40).
[29] *Ibid.* (¶¶ 42-43).
[30] *Id.* at 9 (¶¶ 70-71); *Scalia v. Local 933, New Haven Fed'n of Tchrs.*, 2021 WL 1058616 (D. Conn. 2021). This separate action proceeded before Judge Bryant. Although Burns obliquely referenced this separate action deep within the allegations of his initial complaint, Doc. #1 at 9 (¶¶ 70-71), Burns did not comply with the Court's requirement under D. Conn. L. Civ. R. 40(b)(2) that a party file a Notice of Related Case so that a determination could be made whether the case should have been transferred at the outset to Judge Bryant.

AFT National informed Burns on or around May 23, 2019 that it had formed a committee to investigate the election complaints.[31] AFT National held a hearing on June 6, 2019 in New Haven, but did not place any of the witnesses under oath.[32] During the hearing, Cicarella made numerous untrue and fabricated statements, and Cicarella also "made it apparent" that AFT had told him to accuse Burns of extortion.[33] The AFT National committee performing the investigation ultimately found that Burns had committed extortion.[34]

Doyle concluded his investigation of Cicarella's misuse of funds and issued a report around July 12, 2019.[35] Doyle's report exonerated Cicarella of any wrongdoing with respect to embezzlement and misuse of funds.[36] During his investigation, Doyle did not speak to various parties who might have relevant information.[37] Instead, Doyle's investigation relied upon a financial audit that was performed by NHFT's accountant, who had worked closely with Cicarella in the past.[38]

AFT National issued a report of its findings on July 12, 2019.[39] AFT National concluded that the election would need to be redone because certain members had not been afforded the right to vote.[40] AFT National also concluded that Burns could not be a candidate for NHFT office because he had extorted Cicarella; AFT National cited no authority for barring Burns from running in the election.[41]

---

[31] *Id.* at 6 (¶ 44).
[32] *Ibid.* (¶ 45).
[33] *Ibid.* (¶¶ 46, 48).
[34] *Id.* at 6-7 (¶ 49).
[35] *Id.* at 7 (¶ 51).
[36] *Ibid.*
[37] *Ibid.* (¶ 52).
[38] *Ibid.* (¶ 53).
[39] *Ibid.* (¶ 54).
[40] *Ibid.*
[41] *Ibid.* (¶¶ 55-56).

Sometime after issuing its finding, AFT National publicly alleged that Burns had committed extortion.[42] On July 16, 2019, Weingarten and Hochadel, acting in their individual and representative capacities, sent a letter to the entire membership of the NHFT accusing Burns of extortion and illegal activity.[43] The letter also announced that Burns would be precluded from "participating in this election, or the next one" and also from holding any appointed office.[44] Weingarten and Hochadel did not cite any authority for their decision barring Burns from running for or being appointed to an office for two election cycles.[45] To make matters worse, the New Haven Register ran an article on its front page reporting that Burns had been disqualified as a candidate for president because of extortion.[46]

A few days later, on July 23, 2019, Burns sent an email to the NHFT Executive Board about his election and misuse of funds complaints.[47] In response, Weingarten and Hochadel sent a letter to the Executive Board members refuting Burns' allegations and accusing him of criminal behavior, including attempting to extort the presidency from Cicarella so that Burns could assume the presidency.[48]

Burns filed this lawsuit on August 26, 2020, and he has filed an amended complaint alleging libel, slander, negligent infliction of emotional distress, tortious interference with a contractual relationship, breach of the duty of good faith and fair dealing, and breach of the duty of fair representation.[49] In addition to his state law claims, Burns alleged a claim under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the federal Constitution.[50]

---

[42] *Id.* at 7 (¶ 57).
[43] *Id.* at 8 (¶¶ 58-59); *Id.* at Ex. 1 (Letter from AFT National to NHFT members).
[44] *Id.* at 8 (¶ 61).
[45] *Ibid.* (¶ 62).
[46] *Ibid.* (¶ 63).
[47] *Ibid.* (¶ 64).
[48] *Id.* at 8-9. (¶¶ 65-68); *id.* at Ex. 2.
[49] Docs. #1; #12 at 9–14.
[50] Doc. #12 at 11–12.

On December 21, 2020, the defendants moved to dismiss all the claims with prejudice.[51] Burns subsequently filed a notice of voluntary dismissal of his Section 1983 claim, and he filed an opposition to the motion to dismiss on the same day.[52] Burns opposes the defendants' motion to dismiss insofar as they seek dismissal with prejudice, but—in something of a twist—he nonetheless asks the Court to dismiss his claims on jurisdictional grounds and without prejudice by recognizing his voluntary dismissal of his Section 1983 claim and by declining to exercise supplemental jurisdiction over any of his remaining state law claims.[53]

**DISCUSSION**

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in the complaint and draw all reasonable inferences for the plaintiff. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). Apart from any conclusory recitations, a complaint must include enough facts to state plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this plausibility requirement is not a probability requirement, it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Ibid.*[54]

### *Complete Preemption*

In light of Burns's voluntary dismissal of his Section 1983 claim, I begin by ascertaining if the Court has continued subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). "Whether federal courts have federal question jurisdiction over an action is typically governed by the well-pleaded complaint rule, pursuant to which federal question jurisdiction

---

[51] Doc. #20.
[52] Docs. #32, #34.
[53] Doc. #34 at 3.
[54] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

exists only if plaintiff's statement of his own cause of action shows that it is based on federal law." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010).

On the face of his amended complaint, only state law claims remain. The defendants argue, however, that Counts Five and Six of the amended complaint—though framed as state law claims for tortious interference and for breach of the duty of good faith and fair dealing — provide an independent basis for federal jurisdiction insofar as they are completely preempted by federal labor law.[55]

The Supreme Court has recognized that "[o]n occasion . . . the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 93 (1987). On such occasions, state laws in the same domain as the federal statute are said to be completely preempted, and "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Ibid.*

When complete preemption applies, it "does not mean simply that Congress intended the federal court to adjudicate a state law claim," but rather that "the law governing the complaint is exclusively federal." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238–39 (2d Cir. 2014). And because of its power for jurisdictional purposes to effectively transform a state law claim into a claim arising under federal law, the question of whether complete preemption applies can be "crucial to the existence of federal subject-matter jurisdiction." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 274 (2d Cir. 2005).

---

[55] Doc. #36 at 1–6.

The defendants contend that Counts Five and Six of the amended complaint are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), which provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). Count Five alleges in part that the defendants "tortiously interfered with the contractual and/or business relationship between the plaintiff and NHFT and its membership."[56] Count Six alleges in part that "[i]nherent in every contract is a duty of good faith and fair dealing" and that "[t]he defendants breached that duty of good faith and fair dealing by undertaking discretionary acts of discipline against the plaintiff in violation of the terms of the NHFT Bylaws and the membership agreements with AFT National and AFT Connecticut, and/or the spirit of those agreements."[57]

In cases involving labor relations, the Supreme Court has recognized that "the preemptive force of § 301 [of the LMRA] is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust S. Cal.*, 463 U.S. 1, 23 (1983). Moreover, the Supreme Court has cautioned against giving § 301 a narrow reading, *Smith v. Evening News Ass'n*, 371 U.S. 195, 270 (1962), and it is well established that § 301 covers suits like this one, where an individual union member brings an action against his union and its officers for alleged violations of a union constitution or bylaws. *See Wooddell v. Int'l Broth. Of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991) (holding that § 301 covers suits brought against unions by individual union members for violations of a union constitution); *see also Shea v. McCarthy*, 953 F.2d 29, 31 (2d Cir. 1992) (extending *Wooddell* to suits against individual union officials for violations of

---

[56] Doc. #12 at 13 (¶ 104).
[57] *Ibid.* (¶¶ 107, 108).

union constitution); *Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir. 2000) ("for preemption purposes, the term 'labor contract' includes union constitutions").

Section 301 completely preempts state law claims when a court's evaluation of those claims "is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). To trigger preemption, it is not enough that a court must merely "consult" a labor contract, *see Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d Cir. 1997), but rather, "[w]here the resolution of a state-law claim depends upon an *interpretation* of the [labor contract], the claim is preempted." *Id.*

Applying those standards, I have no trouble concluding that Burns's claims for tortious interference and for breach of the duty of good faith and fair dealing are indeed preempted. For the tortious interference claim, Connecticut law requires a plaintiff to establish:

> (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct.

*Landmark Inv. Grp., LLC v. CALCO Constr. & Dev. Co.*, 318 Conn. 847, 864 (2015). Burns alleges that AFT National, AFT CT, Weingarten, and Hochadel "tortiously interfered" with his contractual or business relationship with NHFT and the NHFT membership, and that, as a result of the defendants' interference, he suffered an actual loss.[58]

Whatever rights or benefits Burns enjoyed by virtue of his contractual or business relationship with NHFT, such rights and benefits were necessarily subject to the terms of the NHFT Bylaws. And whatever duties the defendants owed, such duties were regulated by the AFT National and AFT CT Constitutions. Resolving the tortious interference claim would therefore require me to interpret not one but three labor contracts. I would first need to apply the

---

[58] Doc. #12 at 13 (¶¶ 104–05).

NHFT Bylaws in order to determine whether Burns remained a member in good standing. Next, I would need to interpret the AFT National and AFT CT Constitutions in order to assess the defendants' foreseeable defense that their actions were justified—that is, not *tortious*—under their respective constitutions.

Because its resolution is inextricably intertwined with consideration of the terms of all three labor contracts, Burns's claim for tortious interference is completely preempted by § 301 of the LMRA. *See Wall*, 224 F.3d at 178 (state law tortious interference claims preempted by the LMRA because "[o]nly by examining the [union] Constitution can a court decide whether the Union's [alleged interference] was indeed improper"); *see also O'Donnell v. Boggs*, 611 F.3d 50, 55-56 (1st Cir. 2010) (tortious interference claim preempted because defendants "might be expected to defend various of the acts charged . . . [as] authorized by the contract"); *cf. Quarles v. Remington Arms, Co.*, 848 F. Supp. 328, 332 (D. Conn. 1994) (no preemption where the meaning of the labor contract was "at best tangential and perhaps wholly irrelevant" to plaintiff's tortious interference claim).

Burns's claim for breach of the duty of good faith and fair dealing is likewise preempted by § 301. Under Connecticut law, a plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must prove three elements: (1) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (3) that the defendant acted in bad faith. *See Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 359–60 (D. Conn. 2014); *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 794-95 (2013) (explaining that claim for breach of the

implied covenant must be accompanied by bad faith but noting that the claim "is not implicated by conduct that does not impair contractual rights").

Burns alleges that the defendants "breached [their] duty of good faith and fair dealing by undertaking discretionary acts of discipline" against him "in violation of the terms of the NHFT Bylaws and the membership agreements with AFT National and AFT Connecticut[.]"[59] The only act of discipline alleged in the amended complaint is AFT National's determination that Burns could not run as a candidate for office in the NHFT rerun election.[60] But whether Burns was entitled to run for office necessarily depends upon interpretation of the NHFT Bylaws, and whether AFT National was justified in reaching its determination necessarily entails interpretation of the union membership agreements and constitutions.[61] Accordingly, Burns's claim is preempted by the LMRA. *See Wall*, 224 F.3d 168; *see also Civardi v. Gen. Dynamics Corp.*, 603 F. Supp. 2d 393, 398 (D. Conn. 2009) (claim for breach of good faith and fair dealing against employer and union preempted because "any implied obligation would be implied based on the terms of the [labor contract]").

Burns argues that NHFT, as the bargaining representative of public employees, is not covered by the LMRA, and therefore his claims are not preempted.[62] But this argument fails in two respects. First, even assuming that Burns is correct about the legal status of NHFT, his state law claim would nonetheless require me to interpret the AFT National and AFT CT Constitutions—both of which are subject to the LMRA.

---

[59] Doc. 12 at 13 (¶ 108).
[60] *Id.* at 7 (¶ 55).
[61] The NHFT Bylaws, for example, confer the right to run in elections on individuals with "[u]ninterrupted membership in good standing . . . for at least one (1) year[.]" *See* Doc. 20-2 at 56 (Bellotti Decl.).
[62] Doc. #34 at 16.

Second, although it is true that unions that only represent public sector employees are not subject to the LMRA, *see Baumgart v. Stony Brook Childs.' Serv., P.C.*, 249 F. App'x 851, 852–53 (2d Cir. 2007), the LMRA covers "mixed unions" that represent both public and private employees. *See London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999) (collecting cases "subscribing to the proposition" that mixed unions are subject to the federal labor law); *see also Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F. Supp. 2d 383, 391 (S.D.N.Y. 2002).[63] Here, the record shows that NHFT is a mixed union and therefore is subject to the LMRA.[64]

In short, Burns's claims for tortious interference and breach of the duty of good faith and fair dealing are completely preempted by § 301 of the LMRA. This has consequences not only for jurisdictional purposes but also for merits purposes—that there is federal jurisdiction over these two claims but also that these two claims must be dismissed as preempted by federal law. *See Wall*, 224 F.3d at 178–79 (affirming dismissal of state law claims as preempted by federal labor law where "appellants made no effort to assert them as federal claims even when . . . the Union had asserted the defense of preemption," and "leav[ing] to the sound discretion of the district court whether, on remand, to allow appellants leave to replead the claims in question as arising under federal law"); *see also Anderson v. Aset Corp.*, 416 F.3d 170, 171-72 (2d Cir. 2005) (*per curiam*) (affirming dismissal of tortious interference claim as preempted by federal labor law); *cf. O'Donnell v. Boggs*, 2008 WL 11387134, at *1 & n.3 (D. Mass. 2008) (plaintiff

---

[63] Although *London* and *Cunningham* both involve interpretation of the Labor-Management Reporting and Disclosure Act (LMRDA), the LMRDA has jurisdictional limitations that are similar to those of the LMRA, and the Second Circuit has looked to cases interpreting the limits of LMRDA jurisdiction to determine LMRA jurisdiction. *See Baumgart*, 249 F. App'x at 853 (observing that, for determining jurisdiction over public-sector unions, LMRDA defines "'employee,' 'employer,' and 'labor organization' in a manner that . . . is identical to those terms' definitions in the LMRA").

[64] *See* Doc. #12 at Ex. 1 (Letter from AFT National to NHFT members) (concluding that previous NHFT election must be rerun because "three private-sector NHFT chapters weren't given a chance to vote").

granted leave to amend where he argued that the court should construe any well-pleaded state law claims as arising under § 301).

With Burn's Section 1983 claim having been voluntarily dismissed and his state law claims for tortious interference and breach of the duty of good faith and fair dealing dismissed as preempted, all that remains of the complaint are additional state law claims for defamation (Counts One and Two of the amended complaint), negligent infliction of emotional distress (Count Four), and breach of the duty of fair representation (Count Seven). "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state-law claims." *Klein & Co. Futures, Inc. v. Bd of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006). I decline to exercise supplemental jurisdiction over Burns's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

Accordingly, I conclude that there is federal jurisdiction over this action but that the two claims that give rise to federal jurisdiction must be dismissed as preempted and that it would not be appropriate to exercise supplemental jurisdiction over the remaining state law claims. Therefore, I will dismiss the complaint. This ruling is without prejudice to Burns's right to file a new federal court complaint that properly alleges a federal law claim (other than the § 1983 claim that he has voluntarily dismissed) or to seek any available relief on state law claims in a state court of Connecticut.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss with prejudice as to Counts Five and Six and without prejudice as to the remaining state law claims. The Clerk of Court shall close this case. If Burns has good faith grounds to allege a complaint with one or more causes of action for which there is federal jurisdiction and that state

14

plausible grounds for relief, then Burns may file a motion to re-open this action along with an amended complaint within 30 days. Burns may otherwise seek relief if appropriate in the Connecticut Superior Court.

It is so ordered. Dated at New Haven this 14th day of September 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge